IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MIA WOODS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-01-466-C |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## **REPORT AND RECOMMENDATION**

Plaintiff Mia Woods seeks judicial review of a denial of benefits by the Social Security Administration ("SSA"). The Court should affirm the SSA's decision.

I.   BACKGROUND

Ms. Woods applied for supplemental security income and insurance benefits based on an alleged disability. Administrative Record at pp. 36-38, 119-21 (certified Apr. 1, 2003) ("Rec."). The SSA denied the applications,[1] and Ms. Woods seeks judicial review on grounds involving:

- erroneous consideration of a treating physician's opinion
- error at step four and
- error in the credibility analysis.

The Court should reject the Plaintiff's arguments.

---

[1]   Rec. at pp. 5-6, 12-18.

## II. STANDARD OF REVIEW

The Court's review entails only a determination of whether the SSA's decision is based on substantial evidence and the correct legal standard. *See Emory v. Sullivan*, 936 F.2d 1092, 1093 (10th Cir. 1991). Evidence is substantial if it is greater than a scintilla. *See Sisco v. United States Department of Health & Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). If the SSA's decision lacks substantial evidence or is based on an incorrect legal standard, reversal is necessary. *See Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984). However, a court may not reweigh the evidence or substitute its judgment for that of the SSA. *See Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495, 1498 (10th Cir. 1992).

## III. DR. HISEY'S OPINION

Dr. Brent Hisey treated the Plaintiff for a back injury from June 1998 to March 2000. *See* Rec. at pp. 109-117, 145-58; Plaintiff's Brief in Chief, Exh. A (Nov. 14, 2008). Ms. Woods alleges that Dr. Hisey's opinion supports a disability finding under Listing 1.05(C), which addresses spinal disorders.[2] According to the Plaintiff, the judge's rejection of the listing conflicted with Dr. Hisey's letter of March 13, 2001, and his other records when taken as a whole. The Court should reject this contention.

---

[2] The listings were renumbered after issuance of the decision. Currently, Listing 1.05 concerns "amputation;" but at the time of the decision, Listing 1.05 addressed "disorders of the spine." *Compare* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.05 (1999), *with* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.05 (2008).

A.   Consideration of Listings

The SSA must decide whether the claimant has an impairment that met or equaled a "listing." *See* 20 C.F.R. §§ 404.1520(d), 416.920(d) (1999).[3] A "listing" represents a regulatory presumption that the claimant was disabled. *See* 20 C.F.R. §§ 404.1525(a), 416.925(a) (1999). To fall within the regulatory presumption, the alleged impairment must satisfy or equal all of the specified medical criteria. *See Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990).

B.   Listing 1.05(C)

The applicable version of Listing 1.05(C) required proof of:

- pain, muscle spasm, and significant limitation of motion in the spine and

- appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.05(C) (1999).

C.   Evidence from Dr. Hisey

Ms. Woods presented evidence from Dr. Hisey in the administrative hearing and in the federal district court. *See* Rec. at pp. 109-117, 145-58; Plaintiff's Brief in Chief, Exh. A (Nov. 14, 2008).[4]

---

[3] The Court should apply the Social Security regulations which were in effect at the time of the administrative law judge's decision. *See Branum v. Barnhart*, 385 F.3d 1268, 1272 n.2 (10th Cir. 2004).

[4] In seeking review by the Appeals Council, Ms. Woods submitted additional records from Dr. Hisey, which indicated continued improvement following an L4/5 and L5/S1 interbody fusion, motor function of "5/5," and negative straight leg raising. *See* Rec. at pp. 145-47. But the Plaintiff does not challenge the Appeals Council's treatment of this evidence.

The evidence at the administrative hearing reflected:

- a mild disk bulge at L4/5 and at L5/S1, along with a central and right-sided disk bulge[5]

- muscle spasms in the left paralumbar musculature and low back pain with radiation into the left hip and leg[6] and

- diagnosis of lumbar discogenic pain syndrome.[7]

Dr. Hisey also wrote a letter on March 13, 2001, and stated:

> As far as her application for Social Security Disability, I feel she does fall in the category of 1.05; disorders of the spine, which involves pain, muscle spasm, significant limitations of motions of the spine, which persisted beyond 12 months. This is secondary to her lumbar disk syndrome at L4/5 and L5/S1.

Plaintiff's Brief in Chief, Exh. A (Nov. 14, 2008). Ms. Woods argues that "[t]aken as a whole," Dr. Hisey's letter and other records should satisfy Listing 1.05(C).[8] Ms. Woods is incorrect.[9]

---

[5]   *See* Rec. at pp. 91, 113, 151, 155.

[6]   *See* Rec. at pp. 114-17, 152-53, 155-56.

[7]   *See* Rec. at pp. 111-12, 141, 149-50.

[8]   Plaintiff's Brief in Chief at p. 5 (Nov. 14, 2008).

[9]   In this portion of her opening brief, the Plaintiff also refers to: (1) an opinion from Dr. Hisey which restricted lifting, pushing, reaching away from the body, crawling, kneeling, squatting, bending, and stooping and (2) an opinion from Dr. Melissa Smith-Horn that Ms. Woods suffered temporary total disability and would require vocational retraining. *See* Plaintiff's Brief in Chief at p. 5, Exhs. B & E (Nov. 14, 2008). But the Plaintiff does not argue that these opinions should have affected the SSA's analysis of Listing 1.05(C). *See id.*

Reliance on Dr. Hisey's 2001 letter would not support reversal even if the Plaintiff's interpretation were correct. This letter was submitted after the Appeals Council's issuance of a decision. As a result, the SSA did not have the benefit of the letter at any stage in the administrative proceedings. In this situation, the Court can remand for consideration of the evidence but cannot order reversal based on the newly submitted document. *See* Social Security Act, 42 U.S.C. § 405(g) (2001).[10] Thus, the Plaintiff's argument for reversal based on Dr. Hisey's 2001 letter is misguided as a matter of law.

At most, the letter could only support remand for consideration by the agency. Even for remand, however, the Court's discretion is limited. *See id.* The statute authorizes remand only when the new evidence is material. *See id.*[11] In determining materiality, the Tenth

---

[10] If the Court were to order a remand, the SSA would simply incur an obligation to consider the letter. *See* Social Security Act, 42 U.S.C. § 405(g) (2001). Under the statute the SSA would then need to state whether it was modifying or affirming the decision based on the new evidence. *See id.* The Court cannot subvert the administrative process by ordering reversal based on evidence that was never before the agency. *See Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991) ("If petitioner is correct that the court remanded the case under sentence six, the Secretary must return to District Court, at which time the court will enter a final judgment.").

[11] The statute also requires good cause for the failure to incorporate the additional evidence into the record of prior proceedings. Social Security Act, 42 U.S.C. § 405(g) (2001). The Court may assume *arguendo* that the Plaintiff had shown good cause even though his failure to present the letter to the SSA has not been fully explained.

The Plaintiff points out that Dr. Hisey wrote the letter in 2001, after the Appeals Council had already issued a decision. But the action was remanded to the SSA on April 24, 2002, over a year after Dr. Hisey's submission of the letter. Order to Remand this Matter to the Agency Under Sentence Six for Further Administrative Proceedings (Apr. 24, 2002). In ordering a remand, the Court directed "additional or new proceedings as [would be] appropriate." Order to Remand this Matter to the Agency Under Sentence Six for Further Administrative Proceedings at p. 1 ¶ 3 (Apr. 24, 2002). Nonetheless, the record does not indicate any effort on the part of Plaintiff's counsel to incorporate Dr. Hisey's 2001 letter into the administrative record while the action was pending on remand.

5

Circuit Court of Appeals has fashioned two somewhat different articulations of the standard. One such articulation requires the district court to determine whether the Commissioner's decision "'might reasonably have been different'" with the additional evidence. *Cagle v. Califano*, 638 F.2d 219, 221 (10th Cir. 1981) (quoting *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). A second articulation requires the district court to determine that the "new evidence would have changed the [agency's] decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1493 (10th Cir. 1991) (citation omitted).

Under either standard, Dr. Hisey's letter would not be regarded as "material." Dr. Hisey did say in the letter that he felt the Plaintiff would satisfy Listing 1.05. Plaintiff's Brief in Chief, Exh. A at p. 2 (Nov. 14, 2008). But this determination is reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (1999). As a result Dr. Hisey's ultimate conclusion on the administrative issue would be considered immaterial under either standard.[12]

Arguably, Dr. Hisey's 2001 letter might support satisfaction of some of the elements of Listing 1.05(C), including pain and muscle spasms. *See supra* p. 3. But the administrative

---

[12] *See Dargan v. Chater*, 54 F.3d 772, 1995 WL 280837, Westlaw op. at 2 (4th Cir. May 11, 1995) (*per curiam*; unpublished op.) (holding that a physician's new opinion regarding a disability was not material because it would not assist a fact-finder "in developing an informed opinion or a full understanding of [the claimant's] limitations"); *Beech v. Apfel*, 100 F. Supp. 2d 1323, 1325, 1329-30, 1334-35 (S.D. Ala. 2000) (holding that a physician's new opinion regarding a disability was not considered material because the issue was reserved to the Commissioner); *see also Fouch v Barnhart*, 80 Fed. Appx. 181, 187 n.6 (3d Cir. Oct. 16, 2003) (*dictum*; unpublished op.) (stating that a physician's letter, presented as new evidence, is "likely to be not 'material' evidence because it trenches upon the judgment of disability reserved to the Commissioner").

law judge had not appeared to question the existence of pain or muscle spasms. Indeed, the judge cited Dr. Hisey's reports to find that the Plaintiff had experienced a back disorder and pain. Rec. at pp. 14, 16-17.

In addition to pain and muscle spasms, the listing also requires at least three months of "[a]ppropriate radicular distribution of significant motor loss," "muscle weakness and sensory and reflex loss" "despite prescribed therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.05(C) (1999); *see supra* p. 3. The administrative law judge apparently relied on these elements, as he rejected the claim under Listing 1.05(C) on grounds that Ms. Woods lacked "significant limitation of motion in the spine with significant motor loss with muscle weakness and sensory and reflex loss." Rec. at pp. 15-16. Dr. Hisey's 2001 letter did not appear to address these aspects of Listing 1.05(C).

Under either standard, determination of the need for a remand turns on the likelihood of a different outcome with Dr. Hisey's 2001 letter. Even with this document, the administrative law judge would have had little or no evidence of significant motor or reflex loss, which is essential under Listing 1.05(C).

For example, Dr. Hisey examined Ms. Woods and assessed her "[m]otor function" as "5/5." Rec. at pp. 91-92, 15-17, 145-47, 153, 155. In the 2001 letter, Dr. Hisey did suggest that his initial examination had involved only the lower extremities. Plaintiff's Brief in Chief, Exh. A at p. 1 (Nov. 14, 2008). But Dr. Hisey elsewhere reported "5/5" motor

function in "all groups." Rec. at p. 91. The assessment of "5/5" motor function in "all groups" suggested that Ms. Woods had not experienced "significant motor loss."[13]

Even when a claimant has lost significant motor functioning, Listing 1.05(C) would be triggered only when the cause was radicular. *See supra* p. 3.[14] A neurologist, H.R. Jarrell, M.D., examined Ms. Woods and diagnosed her pain as "discogenic" rather than "radicular." Rec. at pp. 139-40.

The Tenth Circuit Court of Appeals addressed a similar issue in *Baldwin v. Barnhart*, 167 Fed. Appx. 49 (10th Cir. Feb. 14, 2006) (unpublished op.). There the court held that sufficient evidence existed for an administrative law judge to find that the claimant had not satisfied Listing 1.05(C). *Baldwin v. Barnhart*, 167 Fed. Appx. at 53. This evidence included a treating physician's opinion that the claimant's "'pain [had been] discogenic rather than radicular in character.'" *Id.* at 54 (citation omitted).

Similarly, a physician characterized Ms. Woods' pain as "discogenic" rather than "radicular." *See supra* p. 8. And Dr. Perez-Montes expressed doubt about the possibility of

---

[13] *See Torres v. Apfel*, 210 F.3d 385, 2000 WL 61298, Westlaw op. at 2 (9th Cir. Jan. 21, 2000) (unpublished op.) (evidence of "5/5" motor strength adequately supported the administrative law judge's finding that the claimant did not suffer from "significant motor loss with muscle weakness" as required by Listing 1.05(C)); *Buck v. Barnhart*, 238 F. Supp. 2d 1255, 1268 (D. Kan. 2002) (holding that a physician's assessment of "5/5" "motor" function supported the administrative law judge's rejection of a claim under Listing 1.05(C) notwithstanding evidence of muscle weakness).

[14] "'Radiculopathy' is a '[d]isorder of the spinal nerve roots.'" *Baldwin v. Barnhart*, 167 Fed. Appx. 49, 52 n.3 (10th Cir. Feb. 14, 2006) (unpublished op.) (citations omitted). This condition "causes radicular pain radiating into a specific dermatomal pattern with paresis, loss of sensation, and reflex loss." Darlene Hertling BS, RPT & Randolph Kessler, M.D., *Management of Common Musculoskeletal Disorders: Physical Therapy Principles and Methods* 858 (4th ed. 2006).

radiculitis. Rec. at p. 100. With characterization of the pain as discogenic and the skepticism about radiculitis, the administrative law judge had ample grounds to doubt "radicular distribution of significant motor loss."[15]

The absence of radicular pathology is also borne out by the report of LeRoy Young, D.O., who responded to Dr. Hisey's report with additional medical data reflecting normal "[h]eel and toe walking." Plaintiff's Brief in Chief, Exh. C at p. 3 (Nov. 14, 2008). This assessment could weigh against a finding of "significant motor loss" under the pertinent regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B) (1999).

In addition, Dr. Perez-Montes and Dr. Hisey found reflexes at "2+." Rec. at pp. 91, 100, 104, 116. In the new report, relied upon by the Plaintiff, Dr. Hisey regarded the earlier reflex assessments to be within "normal limits." Plaintiff's Brief in Chief, Exh. A at p. 1 (Nov. 14, 2008).[16]

Dr. Hisey's 2001 report did not appear to address the evidence of normal motor functioning, doubt about the presence of radiculitis, normal heel and toe walking, or normal reflexes. All of this evidence could have led the administrative law judge to find insignificant radicular loss in motor functioning or reflexes. Thus, the administrative law

---

[15] *See Arrington v. Apfel*, 185 F.3d 873, 1999 WL 446013, Westlaw op. at 2-3 (10th Cir. July 1, 1999) (unpublished op.) (upholding the administrative law judge's finding that the claimant did not satisfy Listing 1.05(C) in part because radiculitis had been mentioned only intermittently).

[16] Darlene Hertling and Dr. Randolph Kessler stated that a reflex score of "+" or "2" is considered "average." Darlene Hertling, BS, RPT & Randolph Kessler, M.D., *Management of Common Musculoskeletal Disorders: Physical Therapy Principles and Methods* 86-87 (4th ed. 2006).

judge would likely have reached the same conclusion even if he had received Dr. Hisey's 2001 letter prior to issuance of a decision. In these circumstances, the Court should decline to order a remand based on Dr. Hisey's 2001 letter.

The Plaintiff also argues that when read as a whole, the previously-expressed opinions of Dr. Hisey and Dr. Smith-Horn would have compelled a finding that Listing 1.05 had been met or equaled. This argument is not adequately explained because the Plaintiff has not identified an opinion preceding the administrative decision that had been overlooked. As discussed above, Dr. Hisey elsewhere found "5/5" in motor strength and reflexes of "2+." *See supra* pp. 7-9. These assessments alone would have tended to counter any belief that the Plaintiff had experienced significant loss in motor functioning and reflexes, as required by Listing 1.05(C). In these circumstances, the Court should reject the Plaintiff's conclusory assertion that the administrative law judge had failed to credit unidentified opinions by Dr. Hisey and Dr. Smith-Horn.

IV.     STEP FOUR

At step four, Ms. Woods alleges:

- erroneous reliance on opinions from state agency physicians and
- failure to make findings regarding the Plaintiff's past relevant work.

These arguments lack merit.

A.     Opinions from Two State Agency Physicians

Dr. Thurma Fiegel and Dr. Luther Woodcock opined that the Plaintiff did not suffer from a severe impairment. Rec. at pp. 105, 107. The Plaintiff alleges improper reliance on these opinions at step four when the administrative law judge had rejected them at step two. According to Ms. Woods, the judge had erroneously:

- relied on the opinions in assessing the residual functional capacity ("RFC") and finding an ability to perform past relevant work and

- substituted the state agency physicians' opinions in place of contrary opinions by Dr. Hisey and Dr. Smith-Horn.

The Court should reject the arguments for three reasons.

First, the administrative decision does not reflect reliance on the opinions in assessment of the RFC or the finding of Ms. Wood's ability to perform past work as a cashier. The relevant portion of the decision states:

> Both the state agency nonexamining physicians Doctors Fiegel and Woodcock state that the claimant's condition is "not severe." However, the worker's compensation doctor stated that T.T. D. for worker's compensation purposes. [sic] Therefore, the worker's compensation doctor believes that the claimant cannot, temporarily perform the job of certified nurse assistant. Further, additional medical records reveal that the claimant may have back surgery. The undersigned finds that the claimant can work [sic] perform light exertional work.

*Id.* at p. 16. The judge went on to:

- find additional restrictions

- make findings regarding the job requirements of the Plaintiff's past work as a cashier and

- conclude that Ms. Woods could perform her past work.

*Id.* at pp. 16-17. The Plaintiff correctly notes that the judge's step two findings regarding severity are contrary to the opinions by Drs. Fiegel and Woodcock. *See id.* at p. 17 (finding that the Plaintiff suffered from a severe back impairment). Although the judge's rationale is unclear, he apparently did not rely on the opinion of Dr. Fiegel or Dr. Woodcock in the assessment of RFC or the conclusion that Ms. Woods could perform her past work as a cashier.

Second, the Plaintiff does not identify a particular opinion from Dr. Hisey which she believes is contrary to the judge's step four findings.

Third, Ms. Woods argues that the judge's step four findings conflict with the opinion of Dr. Melissa Smith-Horn. But Dr. Smith-Horn did not render her opinion until over seven months after the administrative law judge had issued his decision,[17] and the Plaintiff does not urge remand for consideration of the new evidence as a basis for a different outcome. Thus, the Court should reject the Plaintiff's claim that the judge had substituted the state agency physicians' opinions for those of Dr. Smith-Horn.

    B.    The Administrative Law Judge Adequately Developed the Record and Made Proper Findings Concerning the Plaintiff's Past Relevant Work

At step four, Judge Thompson concluded that Ms. Woods could perform her past relevant work as a cashier, as she had performed that job and as it was performed in the

---

[17]     *Compare* Rec. at p. 18, *with* Plaintiff's Brief in Chief, Exh. B (Nov. 14, 2008).

national economy. *Id.* at pp. 16-17. According to the Plaintiff, the administrative law judge failed to develop the record and make findings regarding the past work. The Plaintiff is incorrect.

The step four analysis consists of three phases. In the first phase, the administrative law judge must evaluate the claimant's RFC. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). In the second phase, the judge must determine the mental and physical demands of the past relevant work and make express findings.[18] At this phase, the judge must obtain adequate "factual information about those work demands which have a bearing on the medically established limitations."[19] In the third phase, the judge must "determine[] whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Winfrey v. Chater*, 92 F.3d at 1023 (citations omitted).

As stated above, the administrative law judge determined that Ms. Woods could work as a cashier as she had previously performed the job or as it had been performed in the national economy. *See supra* pp. 12-13. Thus, the threshold question is whether the judge

---

[18] *See Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007); Social Security Ruling 82-62, Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in General, 1982 WL 31386, Westlaw op. at 4 (1982).

[19] Social Security Ruling 82-62, Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in General, 1982 WL 31386, Westlaw op. at 3 (1982); *see Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007).

had obtained adequate information about the demands of a cashier job. The Court should answer in the affirmative.

The administrative law judge obtained information about the physical demands of the past jobs through Ms. Woods' application. There Ms. Woods stated that for her cashier job, she needed to:

- spend about eight hours per day walking and standing
- sit about one hour per day
- frequently bend
- lift up to twenty pounds in a day and
- frequently lift or carry up to ten pounds.

Rec. at p. 68.

The resulting issue is whether the judge had adequately expressed his findings about the physical demands of the job. He had, stating: "In her former job as cashier, the claimant was required to lift up to twenty pounds and interact with the public on a regular basis." *Id.* at p. 16. The Plaintiff does not state why the evidence or findings would not suffice.[20]

---

[20] The judge did not make specific findings concerning the past work as it was generally performed in the economy. But the Plaintiff bore the burden to prove her inability to return to her "particular former job and to [her] former occupation as that occupation [was] generally performed throughout the national economy." *Andrade v. Secretary of Health and Human Services*, 985 F.2d 1045, 1051 (10th Cir. 1993). As a result, the alleged failure to address the past work as generally performed would have been harmless in light of the finding that Ms. Woods could return to her actual job as a cashier. *See Revels v. Chater*, 74 F.3d 1250, 1996 WL 1184, Westlaw op. at 2 (10th Cir. Jan. 2, 1996) (unpublished op.) (holding that the administrative law judge's failure to develop the record or make findings concerning the requirements of past relevant work was harmless in light of the judge's fulfillment of this duty on another past job).

Ms. Woods also states that the administrative law judge had failed to address the mental demands of the cashier job. But the judge did not find any mental limitations. *See id.* at pp. 16-18. The absence of such limitations obviated the need to explore the mental demands of past employment.[21]

V.   THE CREDIBILITY ANALYSIS

Ms. Woods also alleges a failure to explain the credibility findings. The Court should reject this argument.

In assessing an individual's credibility, the administrative law judge must consider:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the [administrative law judge], the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991). In addition, credibility findings should be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). However, the Tenth Circuit Court of Appeals has "not reduced credibility evaluations to formulaic expressions: 'Kepler does not require a formalistic factor-by-factor recitation of the

---

[21]   *See Wise v. Barnhart*, 42 Fed. Appx. 331, 333 (10th Cir. July 9, 2002) (unpublished op.) ("Because the [administrative law judge] is required to make findings 'about those work demands which have a bearing on the medically established limitations,' he did not err in failing to inquire into the mental health demands of claimant's past work where there were no such limitations." (citation omitted)).

evidence. So long as the [administrative law judge] sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of [*Kepler v. Chater*, 68 F.3d 387 (10th Cir. 1995)] are satisfied.'" *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

The judge acknowledged that Ms. Woods continued to experience pain despite conservative care. Rec. at p. 15. The judge also summarized Ms. Woods' testimony:

> At the hearing, the claimant testified at the hearing that on a typical day, the claimant gets up stiff every morning and in [sic] constant pain. The claimant stated that she usually used ice every three hours for about twenty minutes. The claimant reported that she washed up a few dishes and might dust. Then the claimant reported that she cooked quick dinners. The claimant stated that if she stood on her feet for a long time to prepare dinner, she had to get a chair to sit down to cook. The claimant reported that she then got back on her ice. The claimant testified that she only took Tylenol PM, an over the counter medication. The claimant stated that her left leg was always numb and that she could only stand on it for twenty minutes at a time.

*Id.* Ultimately, Judge Thompson found that the Plaintiff's testimony regarding her back pain was "partially credible" and "partially supported by the objective medical evidence of record." *Id.* at p. 16. In support, the judge noted:

- the Plaintiff's inconsistent use of prescription pain medication

- Ms. Woods' use of ice to relieve her pain and

- Dr. Hisey's opinion that the Plaintiff had normal range of motion and no motor function loss.

*Id.*

The judge set forth the medical evidence, summarized the Plaintiff's testimony, weighed the evidence, and made a credibility determination. In doing so, the administrative law judge did not entirely discount the Plaintiff's pain, but found her partially credible. Judge Thompson explained his thought processes sufficiently for meaningful review, and the Court should reject Ms. Woods' challenge.[22]

## VI.   RECOMMENDATION AND NOTICE OF THE RIGHT TO OBJECT

The Court should affirm the SSA's decision.

Any party may file written objections with the Clerk of the United States District Court. *See* 28 U.S.C. § 636(b)(1). The deadline for objections is April 14, 2009. *See* W.D. Okla. LCvR 72.1. The failure to file timely objections would result in waiver of the right to appeal the suggested ruling. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

---

[22]   In *Sneed v. Barnhart*, 88 Fed. Appx. 297 (10th Cir. Jan. 30, 2004) (unpublished op.), the administrative law judge set forth the medical evidence, summarized the plaintiff's testimony, and found that "[the plaintiff's] impairments related to functional limitations [were] not supported by objective medical findings to the extent alleged" and "[the plaintiff's] allegations regarding his limitations [were] not totally credible for the reasons set forth in the body of the decision." *See Sneed v. Barnhart*, 88 Fed. Appx. at 302. The plaintiff alleged that the administrative law judge had failed to link any evidence to the credibility findings or explain his credibility determination. *See id.* at 301. The Tenth Circuit Court of Appeals rejected this claim and stated:

> In light of the recitation of the relevant evidence, we cannot say that the [administrative law judge] simply rejected Mr. Sneed's credibility in a conclusory fashion. Instead, it was sufficiently specific to satisfy Social Security Ruling 96-7p and Tenth Circuit requirements.

*Id.* at 302 (citation omitted).

VII.  STATUS OF THE REFERRAL

The referral is terminated.

Entered this 25th day of March, 2009.

_____
Robert E. Bacharach
United States Magistrate Judge